

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

September 29, 2021

**BY ECF**

Honorable Paul A. Engelmayer
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

   Re: *United States* v. *Bryant Brown*, S2 20 Cr. 12 (PAE)

Dear Judge Engelmayer:

  The Government respectfully submits this letter in advance of the sentencing of Bryant Brown (the "defendant") scheduled for October 4, 2021 at 11:00 a.m. The defendant shot and killed Albendris Nunez during what Nunez thought was going to be a $600 marijuana sale. Roughly two years later, the defendant took a gun to rob a dealer selling $500 of promethazine with codeine, also called "lean." The defendant's conduct was as callous as it was senseless. Because of the utmost seriousness of the crime, because of the irreparable loss to the Nunez family, and because of the need to impose just punishment, the Government respectfully submits a sentence of 300 months' imprisonment is appropriate.

  I. **Factual Background and Procedural History**

  On December 20, 2015, at approximately 9:12 a.m., the defendant shot and killed Albendris Nunez in Devoe Park in the Bronx, New York during an attempted robbery. United States Probation Office's Presentence Investigation Report, dated July 28, 2021 ("PSR") ¶¶ 12-15).

  The defendant, using his Facebook account, had pretended to be a potential customer and arranged to meet Nunez to purchase a small quantity of marijuana. ("I got 6 flat for 3 oz but if you can drop the price then even better if not ill cop right now"). They arranged to meet at the park at approximately 9:30 am., and Nunez informed the defendant when he arrived at about 9:05 a.m. (PSR ¶¶ 12, 13).

  The defendant brought a firearm to rob Nunez during this meeting and, during the course of the planned robbery, shot Nunez in the back with a .32 caliber bullet. At approximately 9:13 a.m., Nunez collapsed on the sidewalk of University Avenue just outside of Devoe Park. Surveillance footage shows the defendant walked out of Devoe Park just seconds after Nunez

collapsed. The defendant walked by Nunez's collapsed body and then left the scene.[1] Nunez was pronounced dead a short time later. (PSR ¶ 13).

Within five hours of the murder, the defendant had deleted the Facebook conversation with Nunez discussed above from his social media records, presumably in an attempt to destroy the evidence against him. In addition, the defendant was interviewed by law enforcement, and at each opportunity the defendant denied being in Devoe Park the morning of the murder.

On November 18, 2017, the defendant, with co-conspirator Isaiah Cruz, participated in a violent drug robbery inside a residential apartment building in the Bronx. The defendant brought a gun, brandished the gun, and pistol-whipped their victim (the "Victim") to steal drugs. (PSR ¶¶ 16-26).

Cruz orchestrated the robbery after identifying the Victim as someone who was selling liquid promethazine with codeine, also known as "wock" or "lean." Cruz exchanged messages with the Victim and they arranged to meet that same day at a location in the vicinity of the Victim's apartment building under the guise of purchasing the Victim's drugs for $500 in cash. (PSR ¶¶ 17, 21). Meanwhile, the defendant and Cruz, as discussed in messages exchanged before the robbery, planned to feign interest in purchasing the drugs, and instead rob the Victim and split the drugs they obtained. (PSR ¶¶ 16, 19.)

As the Victim was leaving his apartment building for their pre-arranged meeting, the Victim found the defendant and Cruz waiting for him in the lobby of the apartment building. (PSR ¶ 22.) The Victim handed Cruz one bottle of lean for him taste, but then refused to hand over the second bottle of lean until receiving payment. At that point, the defendant pulled out the gun that he was carrying, pointed it at the Victim and then struck the Victim several times in the face. When a female interrupted the altercation by coming into the lobby, the defendant and Cruz fled, still holding on to one bottle of the Victim's lean. *Id.*

The defendant was arrested on January 15, 2020. He was charged by Indictment in two counts arising from the robbery and murder of Albendris Nunez on December 20, 2015: in Count One with an attempted Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951 and 2, and in Count Two with murder through the use of a firearm, in violation of 18 U.S.C. §§ 924(j) and 2. On November 17, 2020, the grand jury returned a superseding Indictment S1 12 Cr. 20 (PAE). The superseding Indictment charged both the defendant and co-defendant Isaiah Cruz in two additional counts arising from the armed robbery on November 18, 2017: in Count Three with a Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951 and 2, and in Count Four with use of a firearm in connection with Count Three, in violation of 18 U.S.C. §§ 924(c)(1)(A) and 2.

Pursuant to an agreement with the Government, the defendant pled guilty on May 6, 2021 to Counts One and Two of a Superseding Information S2 20 Cr. 12 (PAE). Count One charged the defendant with an attempted Hobbs Act robbery on December 20, 2015 in violation of 18 U.S.C. §§ 1951 and 2. The defendant's allocution to Count One included the admission that, during

---

[1] The Government's initial submission stated that the defendant turned back to look at the Nunez as he walked away. Upon further review of the evidence, the Government does not believe it could prove that the defendant looked back at Nunez and is revising its submission accordingly.

the attempted robbery, he shot and killed Nunez. Count Two charged the defendant with conspiring to commit a Hobbs Act robbery on November 18, 2017, in violation of 18 U.S.C. § 371.

In the plea agreement, the parties stipulated that the advisory Guidelines range for this offense is 300 months' imprisonment. Probation agrees with this calculation. (PSR ¶¶ 54, 59, 104.)

## II. Applicable Law

Although *United States v. Booker*, 543 U.S. 220, 264 (2005), held that the Guidelines are no longer mandatory, it also held that district courts must "consult" the Guidelines and "take them into account" when sentencing. As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). The Guidelines' relevance throughout the sentencing process stems in part from the fact that, while they are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives," *Rita* v. *United States*, 551 U.S. 338, 348 (2007), and the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall*, 552 U.S. at 46; *see also Rita*, 551 U.S. at 349.

After performing that calculation, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant," (2) the four legitimate purposes of sentencing, as set forth below, (3) "the kinds of sentences available," (4) the Guidelines range itself, (5) any relevant policy statement by the Sentencing Commission, (6) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," and (7) "the need to provide restitution to any victims." 18 U.S.C. § 3553(a)(1)-(7); *see Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2). To the extent the Court imposes a sentence outside the range recommended by the Guidelines, the Court must "'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *United States* v. *Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (quoting *Gall,* 552 U.S. at 50).

### III. Discussion

The Government respectfully submits that a sentence of 300 months' imprisonment is necessary and appropriate. It is a substantial sentence but proportionate to the defendant's wrongdoing.

*First*, relevant here are the nature and circumstances of the offenses. In 2015, the defendant planned to commit an armed robbery during a marijuana purchase. The defendant exchanged messages with Nunez indicating that he wanted to buy $600 worth of marijuana, and he and Nunez arranged to meet inside of Devoe Park. The defendant brought a gun and then used it to shoot Nunez in the back. Nunez was 31 years old. He left behind family members who continue to grieve his loss, including his parents and his sister.

This murder is all the more tragic because of its senselessness: The defendant ended a man's life while trying to take three ounces of marijuana. The marijuana that the defendant intended to steal was recovered from Nunez's body after his death: three bags of approximately one ounce of marijuana each, and a fourth bag that contained a smaller quantity of marijuana. According to his own submission, the defendant can provide no explanation for why he shot Nunez. After pretending to reach for his money, the defendant drew out the revolver instead and pointed it at Nunez. Nunez moved, and Bryant pulled the trigger. The defense submission quotes from the defendant: "It was a reaction. I can't tell you why."

The Government respectfully submits that a sentence must account for the loss of a young man's life, the immeasurable grief of his family members, and the utter senselessness of his death.

By his own words, the defendant had traveled down this path before December 20, 2015. The defendant's Facebook account makes clear that the defendant sought out ammunition and engaged in robberies on multiple occasions before and after Nunez's death. (*See* PSR ¶¶ 14, 15). In describing the defendant's trajectory, the defense submission suggests that the murder propelled a kind of fatalism that led the defendant further into a life of crime. (Def. Mem. at 4). What the defense submission described as fatalism equally resembles callousness. Moments after shooting Nunez dead, the defendant walked past Nunez as he lay collapsed on the ground. He then took affirmative steps to hide his crime and lied to law enforcement on two occasions. Moving forwards, the defendant was indifferent to and undeterred by the grave risks that he posed to others despite Nunez's death. The defendant knew firsthand how dangerous armed robberies could be, and yet he continued to engage in them.

Approximately two years later, the defendant again took a gun to an armed robbery. He admitted to his co-conspirator and co-defendant Isaiah Cruz that such armed robberies had, in effect, become his livelihood. (*See* PSR ¶ 19 ("stains is how i provide for my family").)

The defendant planned with Cruz to rob a dealer of "wock" or "lean" inside of a residential building in the middle of the day on a Saturday. The defendant brandished a gun and pistol-whipped the Victim when the Victim fought back and refused to hand over half of the product that the robbers planned to steal. The Victim's account, as produced in discovery, stated the following:

September 29, 2021
Page 5

> [T]he 'Spanish Kid' asked him to see one of the pints to make sure it was good. The [Victim] handed over one of the bottles which the 'Spanish Kid' tasted and said it was legit. He then asked about checking the other bottle and the [Victim] asked for the money. The unknown male black pulled out a firearm and pointed it at the Victim. The [Victim] stated he punched the male in the face and they fought inside the location. He further stated the male black struck him multiple times in the face with the firearm. An unknown female entered the building and the two males fled. The [Victim] did state he ran after the males and was struck by a vehicle by the Police Station on Simpson Street.

The Victim told law enforcement officers that the robbery was interrupted when an innocent bystander entered the foyer of the building and disrupted the robbery.  After the robbery was interrupted, the Victim ultimately pursued the defendant and Cruz.  He was hit by a car during that pursuit.  Contrary to the defendant's assertion, the Government does credit the Victim's account.[2] (*But see* Def. Mem at 6 n.3.)   Drug dealers sometimes fight back, as the defendant implicitly recognized every time he took a firearm to commit a drug robbery.  On this occasion, when the defendant encountered resistance, he was immediately ready to use force to subdue the Victim.  The defendant's casual use of violence – striking the Victim multiple times with the firearm – is troubling.  But it is consistent with what he otherwise told Cruz.  The defendant was accustomed to robbery – in fact, that was how the defendant made his livelihood, and he was comfortable using force or firearms to take what he wanted from his victims.

The defendant's conduct was deliberate and repeated over a period of years.  That means, again and again, the defendant chose to disregard risk, to threaten or, where necessary, to harm his robbery victims, and to disregard the innocent bystanders around him.

*Second*, the history and characteristics of the defendant are relevant too. As discussed above with respect to the defendant's criminal history, the defendant has engaged in repeated violent crimes over a period of years.  The danger that he has posed to the community was substantial, and a substantial sentence is required as to protect the community and deter future crimes.

The defendant's individual circumstances present a complicated picture.  On one hand, the defendant came from a two-parent household, and has two children to whom he is devoted.  The defendant has continued to receive support from family members, which hopefully signals that those family members will ultimately facilitate his reentry into society.

On the other hand, the defendant turned to crime even though he enjoyed the support of his parents, who provided for him albeit amid financial hardship.  As his mother described to the probation office, the defendant came from a good family which supported him. (PSR at 26.) Such

---

[2] The defendant now contends that Cruz also had a firearm and speculates that Cruz did not challenge the factual recitation in the PSR because he had a firearm. The Government accepts the defendant's assertion that Cruz had a firearm, and notes that it would not have altered his Guidelines calculation.  It is substantially more likely that Cruz accepted the PSR's factual recitation because it was correct.

September 29, 2021
Page 6

family support, however, was inadequate to deter the defendant from violent crime over a period of years. By his own recounting, supporting his children in fact propelled further crime. He embarked upon the robbery of Albendris Nunez after the birth of his first child in the summer of 2015. He continued to commit armed robberies despite the birth of his second child in 2017. By 2017, he told Cruz that he supported his family through "stains," meaning robberies. It is worth noting that his conduct endangered other peoples' family members without thought for the grief that he could and, in the case of the Nunez family, did cause them.

The Government recognizes the defendant's contrition, as expressed in his letter. He is a young man, and, as the defense notes, he is presently serving his first period of incarceration in admittedly difficult circumstances. But these considerations simply do not outweigh the defendant's crimes, the need to reflect the seriousness of his crimes and account for their consequences, and to prevent any further crimes.

## IV.  Conclusion

For the foregoing reasons, the Government respectfully requests that the Court impose a sentence that accounts for the sentencing factors set forth herein.

Respectfully submitted,

AUDREY STRAUSS
United States Attorney for the
Southern District of New York

By:  /s/
Jamie Bagliebter
Mollie Bracewell
(212) 637-2236

cc:    Clay Kaminsky, Esq. (by ECF)
       Florian Meidel, Esq.